ST. LOUIS, S. F. & T. RY. CO. et al. v. DRAHN et al.

(Court of Civil Appeals of Texas. Ft. Worth. Dec. 2, 1911. Rehearing Denied Jan. 13, 1912.)

1. CARRIERS (§ 230*)—LIVE STOCK—DAMAG-ES FROM DELAY—INSTRUCTIONS—ILLEGAL-LY CONFINING CATTLE.

In an action against a railroad company for damages to cattle from delay in shipment, an instruction that if the shipper requested the conductor in writing to run the cattle for 36 hours without unloading, and that but for a stop at A. 24 hours out of the shipping point the cattle would have reached destina-tion within 36 hours, and that in so stopping the cattle at A. defendant was negligent, "and that such cattle were in such condition at A. that it would not have been inhumane treat-ment to have kept them on the cars, and not unloaded and fed them until they reached" destination, the jury should find for plaintiff, did not contravene the federal statute (Act June 29, 1906, c. 3594, 34 Stat. 607 [U. S. Comp. St. Supp. 1909, p. 1178]), providing that cattle shall not be confined in cars for longer than 28 hours without unloading, un-less the owner requests in writing that the time be extended to 36 hours.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 230.*]

2. APPEAL AND ERROR (§ 742*)—ASSIGN-MENTS OF ERROR—PROPOSITIONS.

An assignment of error is limited in its scope to the questions included in the proposi-tion.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

3. APPEAL AND ERROR (§ 742*)—ASSIGN-MENTS OF ERROR—PROPOSITIONS—RELE-VANCY TO ASSIGNMENT.

In an action for damage caused by delay in transporting cattle, the railroad company as-signed error in an instruction because it was not warranted by the pleadings and proof, and, second, gave an incorrect measure of damages re-sulting from the negligence therein submitted, in that a decline in the market at destination could not be considered in estimating damages for improper care of the cattle in the pens at an intermediate point, as could be done in estimating damages for negligent delay in reaching destination, and the proposition was that, "where the court gives the jury * * * the wrong measure of damages, a new trial should have been granted." Held, that the proposition was not germane to the assign-ment of error, and hence could not be consid-ered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

4. CARRIERS (§ 230*)—LIVE STOCK—INJURIES FROM DELAY—INSTRUCTIONS.

The court instructed, in an action for damage to cattle by delay, that, though defend-ants were authorized to unload and feed the cattle at A., if the pens in which they were unloaded were too small and "insufficient," and the feed troughs were "insufficient" to proper-ly feed the cattle, and the facilities were "in-sufficient" for watering, and the cattle were injured by such defective pens and watering facilities, and that defendants were negligent "in failing to have proper pens and in failing to properly feed and water the cattle," the ju-ry should find for plaintiff. Held, that the in-struction properly submitted, though in a neg-ative way, the railroad company's duty under the federal statute to furnish pens properly equipped for resting, watering, and feeding the cattle.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 230.*]

5. APPEAL AND ERROR (§ 1064*)—HARMLESS ERROR—INSTRUCTIONS—DAMAGES.

Where, in an action for damage by delay, all of the evidence showed a depreciation in the value of the cattle at final destination where they were to be marketed, the use of the word "value," instead of "market value," in the instruction upon the measure of dam-ages, could not have harmed defendant, es-pecially in absence of a requested charge.

[Ed. Note.—For other cases, see Appeal and Error. Cent. Dig. §§ 4221–4224; Dec. Dig. § 1064.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

6. APPEAL AND ERROR (§ 301*)—REVIEW—QUESTIONS CONSIDERED—QUESTIONS RAISED IN MOTION FOR NEW TRIAL.

Railroad companies against whom judgment was rendered for damage for delay in transporting cattle cannot assign as error on appeal failure to show a partnership between appellants in handling the cattle after they had denied a partnership in a verified answer, where that objection to the judgment was not made a ground of their motion for a new trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1753–1755; Dec. Dig. § 301.*]

Appeal from District Court, Erath County; W. J. Oxford, Judge.

Action by J. F. Drahn and others against the St. Louis, San Francisco & Texas Railway Company and another. From a judgment for plaintiffs, defendants appeal. Affirmed.

Martin & Johnson and Andrews, Ball & Streetman, for appellants. Templeton & Agerton, for appellees.

DUNKLIN, J. Drahn & Fletcher, as plaintiffs, recovered judgment against the St. Louis & San Francisco Railway Company and the St. Louis, San Francisco & Texas Railway Company, as defendants, for $292.62 as damages to a shipment of cattle from North Ft. Worth, Tex., to Kansas City, Mo., and the defendants have appealed. For cause of action, plaintiffs alleged that, by the exercise or ordinary care on the part of defendants, the trip could and should have been finished within 36 hours from the time the cattle started from Ft. Worth; but they were unnecessarily and negligently delayed 24 hours en route, by reason of which delay they lost in flesh and were stale in appearance, and thereby their market value was depreciated, and on the day the cattle reached their destination the market for cattle was lower than on the day next preceding when the cattle should have arrived, thus causing a further loss to plaintiffs. At Afton, Okl., the cattle were unloaded from the cars, and fed and watered, and there kept in pens for about nine hours. In their petition plaintiffs alleged that through the negligence of defendants those pens were not equipped with proper facilities for feeding, watering, and caring for the cattle, and as a result thereof the cattle sustained injury, causing a depreciation in their market value. Plaintiff Drahn accompanied the shipment, and testified that after the train had passed Sapulpa, and before it reached Afton, he gave to the conductor in charge of the train a notice in writing requesting him to run the cattle for 36 hours without unloading them for feed and water, and that the cattle reached Afton about 24 hours after they left Ft. Worth. In the sixth paragraph of the charge the trial court instructed the jury substantially that if they should find that Drahn did deliver to the conductor of the train such notice in writing, and that but for the stop at Afton the cattle would have reached their destination within the period of 36 hours from the time they started from Ft. Worth, and that in so stopping them at Afton the defendants were guilty of negligence, "and that such cattle were in such condition at Afton as that it would not have been inhumane treatment to have kept them on the cars and not unloaded and fed until they reached Kansas City, Mo.," then a verdict should be returned in plaintiffs' favor, and their damages assessed "at such a sum of money as you believe to be the difference between the value of said cattle at the time and in the condition they would have arrived at Kansas City, Mo., if they had not been stopped at Afton, Okl., and their value at the time and in the condition they were in when they did reach Kansas City, Mo., plus the cost of feed at Afton with 6 per cent. interest from June 17, 1909."

[1] Error has been assigned to the language first quoted from this charge; the basis of the assignment being stated as follows: "Because the federal laws [Act June 29, 1906, c. 3594; 34 Stat. 607 (U. S. Comp. St. Supp. 1909, p. 1178)] provide that said cattle shall not be confined in cars for a period of time longer than 28 hours without unloading, etc., unless the person in charge or owner in writing requests that the time be extended to 36 hours."

As noted, the charge did not contravene the provisions of the federal statute referred to in the assignment, but, to the contrary, gave it full force and effect, and the language criticised imposed the additional burden upon the plaintiffs, as a condition for a recovery, to show that it would not have been inhumane treatment to have complied with plaintiffs' request to extend the confinement of the cattle to 36 hours.

In the seventh paragraph of the charge the jury were told that the federal statute required defendants to unload the cattle for feed and water "within twenty-eight hours from the time they were placed upon the cars at North Ft. Worth, unless the owner or person in charge of them notifies the defendants in writing and requests them not to stop said cattle under thirty-six hours, or until they reach Kansas City." In view of the entire charge, we do not think that the use of the language "until they reach Kansas City," in this paragraph, likely misled the jury to defendants' injury, as insisted in the second assignment. Evidently it was the purpose of the court that the jury should understand that, if the cattle reached their destination within 36 hours from the time they left Ft. Worth, then defendants were not required to keep them in the cars for the full 36 hours, and we think the jury necessarily so interpreted the instruction.

Appellants introduced evidence tending to show that plaintiff Drahn did not give to the

conductor a written request to continue the run for 36 hours without stopping to feed and water the cattle, and the court gave an instruction supplemental to the main charge, reading: "Although you may believe from the evidence in this case that the defendants were authorized under the circumstances to stop said cattle, and unload, and feed and water them, at Afton, Okl., and in doing so they were not guilty of negligence, still if you believe from the evidence in the case that the pens in which they were unloaded were too small and insufficient, and that the troughs in which they were fed were insufficient to properly feed said cattle, and that the facilities were insufficient for watering them, and that said cattle suffered injury caused by such defective pens, and such defective feeding, and watering facilities, and that it constituted negligence on the part of the defendant as that term is hereinbefore defined in failing to have proper pens, and in failing to properly feed said cattle at said place, then, in that event also, you will find for plaintiffs, and assess their damages as directed in the general charge." By the third assignment of error this instruction is assailed upon two grounds: First, that it was not warranted by the pleadings and proof; and, second, that it gave an incorrect measure for the damages resulting from the negligence therein submitted, in that a decline in the market at Kansas City could not be considered in estimating damages for proper care of the cattle in the pens, as could be done in estimating damages for negligent delay in reaching Kansas City. The only proposition submitted under this assignment reads: "Where the court gives the jury in his charge the wrong measure of damages, a new trial should have been granted."

[2, 3] It is well settled that, if the proposition submitted under an assignment is less comprehensive than the assignment, the latter will be limited to the questions embraced in the proposition. It is also well settled that the proposition must be germane to the assignment. By this proposition complaint is made that the court should have granted a new trial because an erroneous measure of damages was given in the instruction. This is not germane to the assignment and hence cannot be considered.

[4] It is insisted further, that the extent of defendants' duty in furnishing pens in which to unload the cattle was to furnish pens properly equipped for rest, water, and feed, and that in the instruction last quoted the terms "insufficient," "insufficient facilities," "defective pens," and "defective feeding" were all of indefinite and uncertain meaning, and placed upon appellants a higher duty than that imposed by the federal statute. The terms criticised imply no more than the negative of the duty imposed by the statute. At all events, no testimony appears in the record which would tend to show that by the instruction the jury were misled to appellants' injury.

[5] All the testimony introduced to show a depreciation in the value of the cattle at Kansas City by reason of the alleged negligence on the part of appellants had reference to the market value only; hence the use of the expression "value," instead of "market value," in the court's charge upon the measure of damages, could not have operated to appellants' injury, and especially in the absence of a requested instruction by appellants directing the jury that, in considering the depreciation in the value of the cattle, only their market value could be considered, appellants' fifth assignment of error must be overruled.

As indicated above, the plaintiff testified that he did give to the conductor a written request that the cattle be run for 36 hours, and that they be not unloaded at Afton. Therefore, there is no merit in the sixth assignment of error complaining of the judgment because of the absence of such testimony.

[6] By another assignment of error complaint is made of the judgment because no proof was offered to show a partnership between appellants in handling the cattle, notwithstanding appellants had filed an answer duly verified denying that they were partners in shipping the cattle, such partnership having been alleged in plaintiffs' petition. It is a sufficient answer to this assignment to say that this objection to the judgment was not made one of the grounds for appellants' motion for a new trial. Besides, appellants do not point out any testimony negativing the joint liability of both of those companies for the damages in question, in the absence of proof of such a partnership.

We have found no error in the record, and the judgment is affirmed.